# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | |
|---|---|
| JENNIFER BUCK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| vs. ) | Case No. 04-6106-CV-SJ-GAF |
| ) | |
| VIC OLDSMOBILE GMC, INC. ) | |
| d/b/a VIC AUTO PLAZA, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Presently before the Court is a Motion for Summary Judgment filed by Defendant Vic Oldsmobile GMC, Inc. d/b/a Vic Auto Plaza ("Vic Auto"). (Doc. #22). The Plaintiff, Jennifer Buck ("Buck"), filed this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Missouri Human Rights Act, RSMo § 213.010, claiming gender discrimination. (Doc. #1). Vic Auto argues that it is entitled to summary judgment because Buck cannot sustain her burden of establishing a prima facie case of gender discrimination. (Doc. #22). Alternatively, Vic Auto argues that it has articulated legitimate, non-discriminatory reasons for its actions, and that Buck cannot demonstrate that Vic Auto's legitimate, non-discriminatory reasons for its actions are pretextual. Id.

Buck argues that summary judgment is not appropriate in this case. (Doc. #26). In support of her argument, Buck argues that she has sustained her burden of establishing a prima facie case of gender discrimination by producing direct evidence of discrimination as well as evidence which creates an inference of unlawful discrimination. Id. Buck further claims that she has offered evidence that raises a genuine

1

dispute of material fact regarding whether Vic Auto's articulated reason for her termination was pretextual. Id. For the reasons set forth more completely below, Vic Auto's Motion is DENIED.

**I.    Facts**

This case arose after Buck was terminated from employment with Vic Auto. (Doc. #26). In July of 2003, Buck and her husband purchased a car from Vic Auto's Sales Manager, Aaron Hansberry ("Hansberry"). Id. Hansberry was impressed by Buck during the sales process and offered her a job as a sales associate. Id. Buck has a degree in Forensic Chemistry, and she had no prior car sales experience prior to being hired by Vic Auto. Id. The decision to hire Buck as a sales associate was made solely by Hansberry. (Doc. #23). Hansberry did not tell his supervisor, General Manager Craig Reiserer[1] ("Reiserer"), about Buck until after Hansberry had already hired her. (Doc. #26). Buck claims that Hansberry told her that when Reiserer learned that Hansberry had hired her, Reiserer became upset and voiced his disapproval over Hansberry hiring a woman for a position in sales, stating that he would have to restructure his weekly sales meetings. Id. Reiserer denies making such statements, claiming that he was only upset that Hansberry had hired an employee without first informing Reiserer. (Doc. #23).

Buck worked for Vic Auto from July 8 through August 18, 2003. Id. She was expected to work at Vic Auto Mondays through Saturdays, except for Saturdays that she had already been scheduled to work at Applebee's prior to accepting employment with Vic Auto. (Docs. #23, 26). After beginning employment, Buck received Vic Auto's employee handbook and signed a form acknowledging receipt of the handbook. (Doc. #23). The employee handbook provides that employees are expected to devote their

---

[1] Reiserer, as General Manager, supervises Hansberry and all of the other Sales Managers at Vic Auto.

full efforts and energy towards the performance of their jobs at Vic Auto and instructs employees who are considering taking another job to first discuss it with their supervisor. Id. Both before and after accepting employment with Vic Auto, Buck discussed her part-time employment at Applebee's with Hansberry. (Doc. #26). Hansberry gave Buck permission to complete her previously scheduled Saturdays at Applebee's, and Buck alleges that Hansberry also told her she could continue to work at Applebee's on Saturday evenings and Sundays. Id. During her employment with Vic Auto, Buck never resigned from her employment with Applebee's. (Doc. #23). However, Buck alleges that she continued to work at Applebee's only on Sundays, when Vic Auto was closed. (Doc. #26).

After a two week training period, Buck sold seven cars from the last week of July through August 18[2]. Id. According to Reiserer, there are no steadfast requirements regarding the number of cars that should be sold by new associates. Id. However, a new associate who sells four to five cars during the first month of employment and at least ten cars during the second month of employment would generally be on par with expectations. Id.

Vic Auto claims that Buck's sale of seven cars in approximately 26 days[3] did not meet its expectations, and that male salespersons with a level of experience similar to Buck's sold "considerably more cars than [Buck] in relatively the same period of time." (Doc. #23). D. Goodall, who began his employment on June 6, 2003, sold a total of 15 cars between his hire date and August 15, 2003. Id. D. Henderson, who began his employment on June 9, 2003, sold 16 cars between his first day of employment

---

[2] Vic Auto claims Buck sold only six cars, and that the sale of the seventh car was never consummated. (Doc. #30). This discrepancy, however, is immaterial.

[3] Buck worked for Vic Auto for a total of approximately 40 days, counting the two week training period.

3

and the end of August, 2003. Id. K.Siela began his employment on July 25, 2003 and sold a total of nine cars in a five week period. Id. T. Leonard sold 25 cars between July 2, 2003 and August 31, 2003. Id. N. Bigelow sold 21 cars between June 16, 2003 and the August 31, 2003. Id. B. Wells sold 43 cars between June 1, 2003 and August 31, 2003. Id.

Vic Auto claims that male sales associates with sales numbers similar to Buck's either left Vic Auto or were terminated during 2003. Id. For example, R. Farris sold only one car between June 2 and June 13, 2003 and W. Embry sold only two cars between August 12 and August 25, 2003[4]. Id. D. Summers and A. Blowers were terminated in March 2003 for lack of sales performance[5].

Buck was terminated on August 18, 2003 by Hansberry. (Doc. #26). Buck admits that Hansberry never discriminated against her. Id. However, Buck claims that, during her termination, Hansberry stated that he did not want to terminate her and did not think it was right to terminate her. Id. Buck alleges that Hansberry was merely a "cat's paw" for Reiserer, and that it was Reiserer who made the decision to fire her. Id. Buck asked for a written statement describing the reasons for her termination, and Hansberry quickly typed up a simple letter to give to Buck. (Doc. #23). The reason stated in the letter was "a second job that would otherwise interfere with [Buck's] production in this job." Id.

Vic Auto alleges that, in addition to her second job, Buck was terminated based upon an alleged statement that sales were beneath her, her failure to show up to work dressed professionally and with the proper attitude, her overall lack of sales, lack of enthusiasm and lack of professionalism. (Doc. #23). Buck alleges that she never stated anything to the effect that sales were beneath her. (Doc. #26). She claims that

---

[4]Vic Auto does not specify whether Farris and Embry left Vic Auto or were terminated.

[5]Vic Auto does not specify the number of cars sold by D. Summers or A. Blowers.

4

her sales met expectations, and she denies having a lack of enthusiasm or professionalism while employed by Vic Auto. Id. Buck further alleges that the only counseling she received regarding appropriate attire came from the "Vic Auto Plaza Sales Standards and Daily Habits & Attitudes" sheet that stated, "Dress for success–dress shirt and tie." Id. Buck was the only female sales associate working at Vic Auto from July 8 through August 18, 2003. Id.

Vic Auto argues that it is entitled to summary judgment because Buck cannot sustain her burden of establishing a prima facie case of gender discrimination. (Doc. #23). In addition, Vic Auto alleges that it has articulated legitimate, non-discriminatory reasons for its actions, and that Buck cannot demonstrate that Vic Auto's legitimate, non-discriminatory reasons for its actions are pretextual. Id. Buck argues that she has produced sufficient evidence to sustain her burden of establishing a prima facie case of gender discrimination. Id. Buck further claims that she has offered evidence that raises a genuine dispute of material fact regarding whether Vic Auto's articulated reason for her termination was pretextual. Id.

## II. Legal Standard

Vic Auto filed this Motion for Summary Judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. According to this Rule, summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering this Motion, the Court views all facts in the light most favorable to Buck and gives her the benefit of all reasonable inferences. *See* Prudential Ins. Co. v. Hinkel, 121 F.3d 364, 366 (8th Cir. 1997). The Court will not weigh the credibility of the evidence, but rather will focus on whether a genuine issue of material fact exists for trial. Roberts v. Browning, 610 F.2d 528, 531 (8th Cir. 1979);

5

United States v. Porter, 581 F.2d 698, 703 (8th Cir. 1978).

An issue of material fact is "genuine" if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). When the evidence supports conflicting conclusions, a *genuine* issue of material fact exists and summary judgment should be denied. Kells v. Sinclair Buick—GMC Truck, Inc., 210 F.3d 827 (8th Cir. 2000) (emphasis added). The "materiality" of a disputed fact is determined by the substantive law governing the claim. Anderson, 477 U.S. at 248. "Disputes over facts that might affect the outcome of the lawsuit according to applicable substantive law are material." Liebe v. Norton, 157 F.3d 574, 578 (8th Cir. 1998) *citing* Anderson, 477 U.S. at 248.

Vic Auto bears the burden of proving the absence of disputed material facts. *See* Prudential Ins. Co., 121 F.3d at 366. The burden then shifts to Buck to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If Buck fails to establish a factual dispute on an essential element of her case, the Court will proceed to determine whether Vic Auto is entitled to judgment as a matter of law. *See* E.E.O.C. v. Woodbridge Corp., 263 F.3d 812, 814 (8th Cir. 2001). The summary judgment rule is intended "to isolate and dispose of factually unsupported claims" and should be applied to accomplish this purpose. Prudential Ins. Co., 121 F.3d at 366. In the interest of promoting judicial economy, summary judgment should be granted to prevent the trial of cases lacking a genuine issue of material fact. Inland Oil and Transp. Co. v. U.S., 600 F.2d 725, 728 (8th Cir. 1979).

**III.    Analysis**

A plaintiff in a gender discrimination case can survive summary judgment in one of two ways: (1) by producing direct evidence of discrimination; or (2) by "creating the requisite inference of unlawful

discrimination" through the McDonnell Douglas three-step burden shifting analysis[6]. Russell v. Kansas City, Missouri, 414 F.3d 863, 866, 867 (8th Cir. 2005).

   *A. Direct Evidence*

   Buck asserts that she has produced direct evidence of discrimination in that Hansberry allegedly told her that Reiserer was upset that Hansberry hired a woman, and that Reiserer allegedly stated to Hansberry that Reiserer would have to restructure his sales meetings. Direct evidence is "evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004). The term "direct" does not refer to whether the evidence is circumstantial; rather, "direct" refers to the causal strength of the proof. Id.

   The question of whether statements or comments constitute direct evidence of discrimination is highly fact-sensitive. *Compare* Russell, 414 F.3d at 867 (recognizing that comments by a plaintiff's co-workers that she had been singled out for discipline because of her race "may well be direct evidence of discrimination sufficient to withstand the employer's motion for summary judgment") and Simmons v. Oce-USA, Inc., 174 F.3d 913, 915 (8th Cir. 1999) (finding supervisor's telling of a racist joke and use of a racial slur in the workplace insufficient to constitute direct evidence of race discrimination). If the alleged statements and the adverse employment decision were not close in time, Buck must establish a causal link between the statements and her discharge. *See* Simmons, 174 F.3d at 916.

---

[6]The analysis of Buck's claim is the same under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Missouri Human Rights Act, RSMo § 213.010. *See* Houssani, 97 F.3d at 1088.

In this case, Reiserer's remarks were allegedly made shortly after Buck was hired, when Reiserer learned that Hansberry had hired a woman. Buck was not fired until roughly 40 days thereafter. Further, Reiserer's alleged remarks were not made directly to Buck. Rather, Buck claims that the remarks were made to Hansberry, who then related to Buck that Reiserer was upset that Hansberry had hired a woman. Thus, Buck does not claim to know precisely what Reiserer said to lead Hansberry to conclude that Reiserer was upset that Hansberry hired a woman. Considering the secondhand nature of Reiserer's alleged statements as well as the amount of time that passed between the alleged remarks and Buck's termination, this Court finds that Reiserer's alleged remarks are insufficient, standing alone, to show the requisite link between Buck's termination and the alleged discriminatory animus.

*B. The McDonnell Douglas Burden-Shifting Analysis*

In the absence of direct evidence of discrimination, a plaintiff can survive summary judgment by creating the requisite inference of unlawful discrimination through the McDonnell Douglas three-step burden-shifting analysis. Russell, 414 F.3d 866-867. The McDonnell Douglas burden-shifting analysis first requires Buck to present sufficient facts to make out a prima facie case of gender discrimination. *See* McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If she presents facts sufficient to support a prima facie case, then the burden shifts to Vic Auto to rebut Buck's prima facie case by articulating legitimate, non-discriminatory reasons for its actions. *See* Id. If Vic Auto meets its burden, Buck must show that Vic Auto's explanation for its action was merely pretextual. *See* Hossani v. Western Missouri Medical Center, 97 F.3d 1085, 1088 (8th Cir. 1996).

To make out a prima facie case of gender discrimination, Buck must show (1) she is a member of a protected group (female); (2) she was qualified for her job; (3) she was discharged; and (4) the discharge

8

occurred under circumstances giving rise to an inference of discrimination. *See* Rodgers v. U.S. Bank, 417 F.3d 845, 850 (8th Cir. 2005). Only minimal proof is necessary to make a prima facie showing of discrimination. Id.

In this case, the parties agree that Buck is a female, that she was qualified for her job, and that she was discharged from employment with Vic Auto. The issue, therefore, is whether the discharge occurred under circumstances giving rise to an inference of discrimination. Buck makes various allegations in support of her claim that the circumstances of her termination give rise to an inference of discrimination, all of which Vic Auto disputes. Accordingly, genuine issues of material fact exist which preclude summary judgment.

Buck alleges that Reiserer was upset and voiced his disapproval over Hansberry hiring a woman, and stated that he would have to restructure his weekly sales meetings. Id. Vic Auto disputes Buck's allegation that Reiserer made any such statements, as well as Buck's allegation that Hansberry related any such information to Buck. (Doc. #23). Instead, Vic Auto claims that Reiserer was upset merely because Hansberry had hired an employee without first consulting him. Id. Buck claims that Hansberry admitted that he did not want to fire her and did not think it was right to fire her, and she alleges that it was Reiserer's decision to terminate her. (Doc. #26). Vic Auto claims that Hansberry, not Reiserer, made the decision to fire Buck. Id.

Buck also alleges that, despite Hansberry's assurance that she could continue to work at Applebee's on Saturday evenings and Sundays, the stated reason for her termination on August 18, 2003 was "due to a second job that would otherwise interfere with [her] production in this job." Id. Vic Auto claims that Buck was expected to resign from Applebee's after completing her previously scheduled shifts. (Doc. #23).

Further, Buck sold seven cars in the 26 days following her two week training period. (Doc. #26).

9

Buck claims that, in light of Reiserer's statement that he generally expects new hires to sell four to five cars in the first month of employment, her performance met Vic Auto's expectations. Id. Buck further claims that, relative to her length of employment, her sales were at least equal to various male associates who were not discharged. Id. Vic Auto disputes Buck's characterization of her sales performance, alleging that male associates with sales numbers similar to Buck's either left Vic Auto or were discharged. (Doc. #23).

Buck has presented sufficient evidence to raise genuine issues of material fact as to whether Reiserer made statements to the effect that he was upset that Hansberry had hired a woman, whether Reiserer made the decision to terminate Buck, whether Buck was allowed to continue working at Applebee's, and whether Buck's sales met Vic Auto's expectations. The facts presented by Buck, if believed by the jury, support a prima facie case of gender discrimination. Accordingly, Buck's claims must be submitted to a jury as genuine issues of material fact preclude summary judgment.

Because Buck has presented sufficient facts to make out a prima facie case of discrimination, the burden shifts to Vic Auto to articulate legitimate, non-discriminatory reasons for its actions and then back to Buck to show that Vic Auto's reason was pretextual. A plaintiff can avoid summary judgment at the pretext stage "if the evidence considered in its entirety (1) creates a factual issue as to whether the employer's proffered reasons are pretextual, and (2) creates a reasonable inference the [her gender] was a determining factor in the adverse employment decision." Rothmeier, 85 F.3d at 1336-1337.

The same genuine issues of material fact exist regarding whether Vic Auto's proffered reason for terminating Buck's employment were pretextual. Buck has presented evidence which creates a factual issue as to whether Vic Auto's proffered reasons for discharging her are pretextual and which, if believed by the trier of fact, creates a reasonable inference the her gender was a determining factor in her termination.

10

Accordingly, summary judgment is inappropriate.

## CONCLUSION

Buck has alleged facts sufficient to support a prima facie case and create the requisite inference of unlawful gender discrimination under the McDonnell Douglas three-step burden-shifting analysis. Buck also produced sufficient evidence to support the conclusion that Vic Auto's stated reason for her termination were pretextual, and that Buck's gender was a determining factor in her termination. Because genuine issues of material fact exists for trial, Vic Auto's Motion for Summary Judgment is DENIED.

**IT IS SO ORDERED.**

/s/ Gary A. Fenner
GARY A. FENNER, JUDGE
United States District Court

DATED: **December 5, 2005**